OPINION
{¶ 1} Appellant Linda Alexander, the natural mother of Demetrius Alexander, appeals a judgment of the Stark County Common Pleas Court, Juvenile Division, awarding permanent custody of Demetrius to appellee Stark County Department of Job and Family Services:
 {¶ 2} "The judgment of the trial court that the minor child cannot or should not be placed with his mother is against the manifest weight of the evidence.
 {¶ 3} "The judgment of the trial court that the best interest of the minor child would be served by granting permanent custody to SCDJFS is against the manifest weight of the evidence."
 {¶ 4} Demetrius was born on January 4, 2001. On August 21, 2001, appellee filed a complaint alleging that Demetrius was neglected, and seeking temporary custody of the child. The complaint was later amended to allege dependency, and appellant stipulated that Demetrius was a dependent child. Temporary custody of Demetrius was granted to appellee.
 {¶ 5} A case plan was adopted which included addressing domestic violence concerns between appellant and Demetrius' father, obtaining stable housing, addressing substance abuse problems, and attending Goodwill Parenting. Appellant was incarcerated when the case began, but upon her release made only minimal progress on the case plan. Appellee filed a motion seeking permanent custody of Demetrius on July 23, 2002. Following trial, the court granted the motion for permanent custody, terminating appellant's parental rights.
 I {¶ 6} Appellant argues that the court's finding that the child cannot be placed with her within a reasonable time is against the manifest weight of the evidence. She argues that she is currently participating in completing the case plan, and if given six months, would be able to parent Demetrius.
 {¶ 7} Beginning in November of 2001, appellee attempted to assist appellant in obtaining appropriate housing. As of the time of trial, she had obtained only an efficiency apartment, and had lived there only a few weeks before trial. Although appellant was required to keep her social worker notified of her living arrangements, there were many times when the social worker was unable to locate appellant. Appellant would tell her social worker that she was staying with relatives, but when the social worker went to check at these places, the relatives would state that appellant was not living there.
 {¶ 8} The case plan called for appellant to attend the Renew Program. Appellant indicated she would prefer to attend the FreeSpace Program instead. This substitution was acceptable to appellee. Appellant attended FreeSpace, but was terminated from the program prior to completion.
 {¶ 9} With respect to the issues concerning substance abuse, appellant was in and out of services with Quest from the beginning of the case, and was unsuccessful concerning treatment offered to her. Appellant provided samples of urine which tested positive for marijuana on September 22, and 25, 2001; October 20, and 25, 2001; and December11, 2001. After December 11, 2001, appellant did not submit a further sample until March 27, 2002, which tested positive for cocaine. Subsequently, appellant submitted samples which tested positive for cocaine on April 10, May 28, June 19, June 21, June 24, and July 10, 2002. Despite a requirement that she submit urine samples twice per week, appellant submitted only one sample between July 10, 2002, and the date of the permanent custody trial, which was September 10, 2002. After a visit on August 6, appellant agreed to submit a sample for chemical analysis, and assured her social worker that had sufficient bus fare to get to Quest and back to her residence. However, appellant failed to submit a urine sample on that day. The agency then requested appellant submit a sample on August 13, but she refused. Instead, she submitted a sample on August 19, which was negative for both marijuana and cocaine.
 {¶ 10} Appellant did complete a psychological evaluation as required by the case plan. The recommendation of the evaluation was that she should obtain ongoing therapy from NOVA. Despite being informed of the requirement that she obtain therapy in February of 2002, appellant did not begin treatment until June, 2002. As of the date of trial, she had attended 29 sessions, and missed 24. As a result of her erratic attendance, NOVA could not accurately assess her improvement and compliance with the treatment plan.
 {¶ 11} Visitation with the child was sporadic, particularly during the periods of time in which appellant's whereabouts were unknown to appellee.
 {¶ 12} On her first attempt at the Goodwill Parenting Program, appellant could not complete the program due to her incarceration after 33 sessions. Of the 33 sessions, appellant attended 26. On one day, she attempted to provide verification for an absence which was later determined to be false. Appellant presented an intake form from the Massillon Domestic Violence Shelter, which had been altered to make it appear that she was at the shelter on the day she was absent from Goodwill. It was later verified with the shelter that there was no record of her attending on the day which appeared on the form.
 {¶ 13} Appellant's second attempt to complete Goodwill Parenting classes began on January 28, 2002. She was terminated from the program on February 13, after she came into her instructor's office shaking, and stated that she used drugs daily. During the disclosure, appellant continually requested that the instructor give her a beer.
 {¶ 14} The evidence supports the court's conclusion that pursuant to R.C. 2151.414 (E)(1), appellant failed to remedy the problems that caused the child to be placed outside the home, and the child could not be placed with appellant within a reasonable time.
 {¶ 15} The first assignment of error is overruled.
 II {¶ 16} Appellant argues that the court's finding that the best interest of Demetrius would be served by granting permanent custody to appellee is against the manifest weight of the evidence.
 {¶ 17} The evidence at trial demonstrated that Demetrius is a one-year old, African-American child without significant physical or developmental delays. The evidence demonstrated that he may be slightly advanced, especially in the area of motor skills, and he communicates well. There was evidence that although the foster family was not interested in adopting him, Demetrius is an adoptable child, and has no trouble bonding to substitute care givers. There is evidence that he was not significantly bonded to his mother, and the harm done by severing that bond was outweighed by the benefit of adoption.
 {¶ 18} The court's finding that a grant of permanent custody would be in the best interest of the child is not against the manifest weight of the evidence.
 {¶ 19} The second assignment of error is overruled.
 {¶ 20} The judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.
By Gwin, P.J., Edwards, J., and Boggins, J., concur.
permanent custody — manifest weight.